UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVANCED VIDEO TECHNOLOGIES LLC, | |
| Plaintiff, | |
| vs. | Case No. 1:11-cv-06604 (CM) (RLE) |
| HTC CORPORATION AND HTC AMERICA, INC., | |
| Defendants. | |
| ADVANCED VIDEO TECHNOLOGIES LLC, | |
| Plaintiff, | |
| vs. | Case No. 1:11-cv-08908 (CM) (RLE) |
| BLACKBERRY, LTD. AND BLACKBERRY CORPORATION, | |
| Defendants. | |
| ADVANCED VIDEO TECHNOLOGIES LLC, | |
| Plaintiff, | |
| vs. | Case No. 1:12-cv-00918 (CM) (HBP) |
| MOTOROLA MOBILITY LLC, | |
| Defendant. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FEES AND COSTS UNDER 35 U.S.C. § 285, 28 U.S.C. § 1927, AND THIS COURT'S INHERENT POWER**

## TABLE OF CONTENTS

                                                                                            Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 3

    A. Correspondence in 2003 between AVT's in-house counsel and Mr. Gross demonstrates AVT's knowledge of the chain-of-title defect ................................. 3

    B. Despite knowing that it could not prove the transfer of the '788 patent from AVC to Epogy via merger, AVT represented to the Patent Office that Epogy had acquired the patent via merger, and then further changed its position regarding the alleged merger during the lawsuits and relied on a frivolous interpretation of Delaware corporations law .......................................... 5

    C. Despite being confronted by Defendants with clear evidence to the contrary, AVT continued to press forward with its lawsuits under the pretense that it owned the '788 patent ................................................................... 7

III. ARGUMENT ........................................................................................................................ 8

    A. Attorneys' fees should be awarded under § 285 as these cases clearly "stand out" from other patent cases ......................................................................... 8

    B. Sanctions should be imposed for bad faith litigation under § 1927 and this Court's inherent power ......................................................................................... 11

IV. CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Dux S.A. v. Megasol Cosmetic GmbH*,
   No. 03-CV-8820, 2006 U.S. Dist. LEXIS 395 (S.D.N.Y. Jan. 6, 2006) ................................12

*Gollomp v. Spitzer*,
   568 F.3d 355 (2d Cir. 2009).................................................................................................12

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
   275 F.3d 1378 (Fed. Cir. 2002)..............................................................................................8

*LendingTree LLC v. Zillow, Inc. et al.*,
   No. 3:10-cv-00439-FDW-DCK, slip op. (W.D.N.C. Oct. 9, 2014) (Chen
   Decl., Ex. 10) .......................................................................................................................10

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
   24 F. Supp. 3d 329, 335 (S.D.N.Y. May 30, 2014) ..........................................................8, 10

*Marx v. Gen. Revenue Corp.*,
   133 S. Ct. 1166 (2013).........................................................................................................11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014)..............................................................................................8, 10, 11

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004).................................................................................................11

*Visioneer, Inc. v. KeyScan, Inc.*,
   No. 08-cv-03967-MHP, slip op. (N.D. Cal. July 9, 2009) (Chen Decl., Ex. 9).......................10

*Worldwide Home Prods. V. Bed, Bath & Beyond, Inc.*,
   Case No. 11-cv-3633-LTS-MHD, 2015 U.S. Dist. LEXIS 46569 (S.D.N.Y.
   Apr. 9, 2015) .........................................................................................................................8

**Statutes and Rules**

28 U.S.C. § 1927 ("§ 1927").........................................................................................1, 2, 11, 12

35 U.S.C. § 285...................................................................................................................1, 2, 8, 11

Del. Code. Ann. Tit. 8, § 281(b) ................................................................................................7, 10

Federal Rule of Civil Procedure
   11.................................................................................................................................1. 2, 7, 9
   54..............................................................................................................................................2

I.      INTRODUCTION

Under 35 U.S.C. § 285 ("§ 285"), 28 U.S.C. § 1927 ("§ 1927"), and this Court's inherent power,[1] Defendants HTC Corporation and HTC America, Inc. ("HTC"), Blackberry Ltd. and Blackberry Corporation ("Blackberry"), and Motorola Mobility LLC ("Motorola") (collectively "Defendants") move for an award of attorneys' fees, as well as costs and other expenses, against Plaintiff Advanced Video Technologies LLC ("AVT" or "Plaintiff") and its counsel, including Lerner, David, Littenberg, Krumholz & Mentlik, LLP (the "Lerner David Firm"), The Lehrer Patent Law Firm LLC (the "Lehrer Firm"),  MacCartney, MacCartney, Kerrigan & MacCartney (the "MacCartney Firm"), FisherBroyles LLP (the "FisherBroyles Firm"), and Eckert Seamans Cherin & Mellott, LLC (the "Eckert Firm").[2]

AVT and its counsel brought and maintained suit against Defendants, alleging infringement of U.S. Patent No. 5,781,788 (the "'788 patent" or "patent-in-suit"), when they knew or should have known long before filing suit that AVT had no ownership interest in the '788 patent because an alleged transfer of the patent-in-suit between two of AVT's purported predecessors-in-interest never occurred.  As early as 2003, ███████████████████████████████████████████████████████████████████████████████████████████████ But AVT and its counsel did nothing to remedy or even

---

[1] Under the same facts, Defendants have filed a separate motion for sanctions under Federal Rule of Civil Procedure Rule 11(c).

[2] The Lerner David Firm filed suit against HTC and Blackberry in 2011.  The Lehrer Firm and the MacCartney Firm filed suit against Motorola in 2012, and the case was later transferred to the FisherBroyles Firm.  The Eckert Firm recently started representing AVT against all Defendants in April 2015.

investigate this chain-of-title defect before they pressed ahead and sued Defendants under the pretense that AVT owned the '788 patent. These facts make the instant cases "stand out" under recent Supreme Court guidance and thus "exceptional" under § 285, under which an award of reasonable attorneys' fees is thus warranted.

Further, as this Court has found, after examining all evidence (or rather, the lack thereof) in the record, AVT failed to even raise a factual dispute about this critical ownership issue. Yet a cursory review of the record by AVT and its counsel would have informed them of the utter lack of evidence to satisfy their burden to prove ownership. Indeed, in responding to Defendants' Rule 11 letter, AVT and its counsel could not even articulate the "form of the transaction" that they alleged had transferred the patent-in-suit between the two alleged predecessors-in-interest of AVT. AVT and its counsel, therefore, filed and maintained suit in bad faith, and should thus be jointly and severally liable under § 1927 and the Court's inherent power for attorneys' fees,[3] as well as all other costs and expenses, incurred by Defendants.

///

---

[3] If the Court grants the present motion for attorneys' fees, Defendants request 30 days from such order to submit the requisite documentation of fees sought. *See* Fed. R. Civ. P. 54(d)(2)(B)(iii) (requiring only that a "fair estimate" of attorney fees be included in a motion for fees); *see also* Fed. R. Civ. P. 54 Advisory Committee Notes, 1993 Amendments, Paragraph (2) ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)."). HTC estimates that from September 22, 2011, when the initial complaint in Case No. 1:11-cv-06604 was filed, through today, HTC has incurred approximately ███████ in attorneys' fees. Blackberry estimates that from December 6, 2011, when the initial complaint in Case No. 1:11-cv-08908 was filed, through today, Blackberry has incurred approximately ███████ in attorneys' fees. Motorola estimates that from February 6, 2012, when the initial complaint in Case No. 1:12-cv-00918 was filed, through today, Motorola has incurred approximately ███████ in attorneys' fees.

## II.    BACKGROUND

AVT, a New York limited liability company, was founded by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (Declaration of Kyle D. Chen in Support of Defendants' Motion for Fees ("Chen Decl."), Ex. 1 at AVT0035453-AVT0035466.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The '788 patent's putative initial assignee is a now-defunct Delaware company, AVC Technology Inc. ("AVC"). (Order Granting Motion To Dismiss (Dkt. No. 165 in Case No. 1:11-cv-06604-CM-RLE, hereinafter "Order") at 4-6.) In or about 2000, a now-defunct California company, Epogy Communications, Inc. ("Epogy"), allegedly "acquired AVC" (according to Epogy's former "CEO and Co-Chair") and "intended to succeed to ownership of all patents of AVC" (according to Epogy's "incorporator, Secretary and Director"). (*Id.* at 20-21.) In November 2002, AVC was dissolved. (*Id.* at 7.) In January 2003, Epogy allegedly assigned the '788 patent to Mr. Gross, who then allegedly assigned the '788 patent in April 2003 to AVT. (*Id.*) Epogy was also dissolved in January 2003. (Dkt. No. 102-9 at Page 18 of 21 in Case No. 1:11-cv-06604.)

But, as this Court found, there is no evidence in the record showing that Epogy ever acquired AVC's assets, let alone legal ownership of the '788 patent. (Order at 20-22.)

### A.    Correspondence in 2003 between AVT's in-house counsel and Mr. Gross demonstrates AVT's knowledge of the chain-of-title defect.

Discovery in this case revealed that, as early as 2003, AVT and its manager GPC had known about this defect in the chain of title of the '788 patent. Specifically, ▮▮▮▮▮▮▮▮

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████

███

████████████████████████████████████████
██████████████████████████

██████

(Chen Decl., Ex. 2, Gross 4/2/15 Depo. Ex. 241, AVT0068599 (emphasis added).)

███████████████████████████████████████████████

████████████████████

███

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

████████████

████████████████████████████████████████
██████████████████████████

████████████████████

███

(Chen Decl., Ex. 3, Gross 4/2/15 Depo. Ex. 242, AVT0034121 (emphasis added).)

    Thus, ████████████████████████████████████
███████████████████████████████████████████████ (*Id.*

-4-

(emphasis added).) But AVT produced no ▓▓▓▓ during discovery or in response to HTC's motion to dismiss. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*)

During these cases, Mr. Gross, appearing as AVT's corporate designee, also testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Chen Decl., Ex. 4, Gross 4/2/15 Depo. Tr., at 302:11-18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Gross further testified that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 311:6-12; 312:4-16.) Additionally, Mr. Gross admitted that he had no personal knowledge on whether any "deal" between AVC and Epogy actually occurred. In particular, when asked during his first deposition ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Chen Decl., Ex. 5, Gross 10/22/14 Depo. Tr., at 171:15-19.) During his second deposition, Mr. Gross confirmed that he had no personal knowledge of the alleged deal between AVC and Epogy. (*See*, *e.g.*, Chen Decl., Ex. 4, Gross 4/2/15 Depo. Tr., at 291:5-10.)

>    **B.    Despite knowing that it could not prove the transfer of the '788 patent from AVC to Epogy via merger, AVT represented to the Patent Office that Epogy had acquired the patent via merger, and then further changed its position regarding the alleged merger during the lawsuits and relied on a frivolous interpretation of Delaware corporations law.**

Also in 2003, Mr. Cohen, acting as AVT's then in-house counsel, recorded a "Purchase Offer Agreement," dated July 17, 2000, with the Patent Office as the basis for the alleged

transfer of the '788 patent from AVC to Epogy. (Dkt. No. 102-5 in Case No. 1:11-cv-06604, at AVT0024724-28.) The recordation document filed with the Patent Office was signed by Mr. Cohen on the same day as his e-mail exchanges with Mr. Gross discussed above, May 8, 2003, but was not sent to the Patent Office until May 12, 2003. (Chen Decl., Ex. 6 at AVT0024711-23.) In the Purchase Offer Agreement, a "short-form" merger of AVC into Epogy was proposed. (Order at 6-7.) AVT's recordation of the Purchase Offer Agreement was a representation to the Patent Office that its claimed chain of title to the '788 patent relied upon the operation of that merger agreement. But as this Court found, corporate records from the state of Delaware show no evidence of any merger between AVC and Epogy and show that AVC was actually not dissolved until November 2002--only a few months before Epogy's own dissolution in January 2003. (Order at 7; Dkt. No. 102-9 at Page 18 of 21 in Case No. 1:11-cv-06604.)

In fact, in opposing Defendants' motion, AVT abandoned its representation to the Patent Office and *admitted* that no merger between AVC and Epogy had ever occurred. (Order at 13.) Instead, AVT argued for the first time that Epogy acquired AVC's assets (including the '788 patent) upon AVC's dissolution because Epogy had allegedly acquired 100% of AVC's shares, despite *zero* documentation of this alleged acquisition and *zero* attempts to investigate or to verify this acquisition. (*See* Chen Decl., Ex. 3, Gross Depo. Ex. 242, AVT0034121; *see also* Chen Decl., Ex. 4, Gross 4/2/15 Depo. Tr., at 302:11-18; 311:6-12; 312:4-16.)

But as this Court explicitly found, even if Epogy had acquired 100% of AVC's shares (a proposition that has no supporting documentation whatsoever), there is no law or legal principle under which AVC's assets would have been automatically transferred to Epogy upon AVC's dissolution. (Order at 13-14 ("AVT cites no authority for this assertion, and understandably so, because Epogy did not acquire any of AVC's assets simply by purchasing 100% of its stock.

-6-

That is a well-settled proposition of corporate law ….").) In fact, as this Court explained in detail, the opposite is true. (*Id.* at 14-16.) AVT's opposition relied on an unreasonable and selective citation of Del. Code. Ann. Tit. 8, § 281(b). (*Id.* at 17-19.) As this Court found, AVT, without explanation, ignored critical portions of that section, including provisions that the assets of a company are not automatically distributed to its shareholders upon dissolution. (*Id.*) In particular, before any distribution, the adoption of a "plan of distribution" is required. (*Id*. at 16-18.) AVT provided no evidence that a plan of distribution was ever contemplated or adopted, nor did it try to explain why a plan of distribution was not necessary, much less cite to any authority. (*Id*. at 18-20.) AVT simply ignored the portions of § 281(b) in the Delaware code that did not support its position. (*Id.*) The Court thus found that AVT's interpretation of § 281(b) was without any merit and "under **no reading** of § 281(b) could Epogy have acquired title to the patent pursuant to that statute before" the critical date when Epogy allegedly transferred the '788 patent to Mr. Gross. (*Id*. at 20 (emphasis added).)

> C. **Despite being confronted by Defendants with clear evidence to the contrary, AVT continued to press forward with its lawsuits under the pretense that it owned the '788 patent.**

Shortly after the close of discovery, Defendants confronted AVT and its counsel pursuant to Rule 11(c)(2) by a letter dated November 7, 2014, explaining in great detail that AVC never transferred the '788 patent to Epogy, among other deficiencies. (Chen Decl., Ex. 7.)

In its response to Defendants' Rule 11 letter, AVT and its counsel refused to dismiss the lawsuits and distanced itself from the proposed statutory short-form merger described in the Purchase Offer Agreement recorded with the Patent Office. (Chen Decl., Ex. 8 at 2-3.) But AVT and its counsel continued to assert that AVT owned the '788 patent with the caveat: "Without conceding the form of the transaction." (*Id.* at 3.) AVT instead conclusively asserted that "[r]egardless of **whatever** alleged defect that Defendants now try to create with respect to

-7-

Epogy's acquisition of AVC, Epogy became the owner of the '788 Patent." (*Id.* at 3 (emphasis added).) As if stating a fact made it true. (*Compare with* Order at 22 ("But believing does not make it so."))

## III. ARGUMENT

### A. Attorneys' fees should be awarded under § 285 as these cases clearly "stand out" from other patent cases.

AVT's lawsuits against Defendants "stand[] out" from other patent cases and thus are "exceptional" under § 285[4] because AVT and its counsel knew or should have known that AVT did not have legal title to the patent-in-suit at the time the complaints against Defendants were filed. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1751 (2014) ("An 'exceptional' case, then, is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.") Pursuant to the guidance in *Octane Fitness*, courts in this district look to a nonexclusive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335 (S.D.N.Y. May 30, 2014) (citation and quotation omitted); *Worldwide Home Prods. V. Bed, Bath & Beyond, Inc.*, Case No. 11-cv-3633-LTS-MHD, 2015 U.S. Dist. LEXIS 46569, at 4 (S.D.N.Y. Apr. 9, 2015) (same).

---

[4] Even though this Court has found want of standing by AVT, a claim under § 285 is still proper. *See H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed. Cir. 2002) (holding that the standing defect "had no effect" on the § 285 attorneys' fees claim, which can still be properly asserted).

As discussed above, the evidence in this case shows that █████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████ (Chen Decl., Ex. 2, Gross 4/2/15 Depo. Ex. 241, AVT0068499.)  Specifically, ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (Chen Decl., Ex. 3, Gross 4/2/15 Depo. Ex. 242, AVT0034121.)  But Mr. Gross testified that ████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ (Chen Decl., Ex. 4, Gross 4/2/15 Depo. Tr., at 302:11-18, 291:5-10; Chen Decl. Ex. 5, Gross 10/22/14 Depo. Tr., at 191:15-19.)  Tellingly, ███████████████████████████████████████ ████████████████████████████████████  Indeed, AVT later admitted that no merger between AVC and Epogy that could have purportedly transferred the patent-in-suit from AVC to Epogy had actually occurred.  (Order at 7.)  Yet, despite their full awareness of the defect, AVT and its counsel decided to file suit against Defendants without remedying or even investigating the defect.  (Chen Decl., Ex. 4, Gross 4/2/15 Depo. Tr., at 311:6-12; 312:4-16.)

Further, after receiving Defendants' Rule 11 letter calling them out that the "merger" theory would not work, AVT and its counsel could not even articulate in their response, provided after almost a month, "the form of the transaction" that they argued had transferred the '788

patent from Epogy to AVC.  (Chen Decl., Ex. 8 at 3.)  Then, in their opposition to Defendants' motion to dismiss, AVT and its counsel invented for the first time, more than three years into the lawsuits, a new theory that Epogy acquired the patent-in-suit via its purported prior purchase of 100% of AVC's shares.  (Order at 13.)  But as this Court has found, there is no legal basis for AVT or its counsel to reasonably conclude that the transfer of the '788 patent from AVC to Epogy could have actually occurred in this manner.  (*Id.* at 20 ("In short, under no reading of §281 (b) could Epogy have acquired title to the patent pursuant to that statute before January 15, 2003, the date when it purported to assign its rights to Gross.")  Indeed, this Court found that "**AVT Has Failed to Show, or Even Raise A Genuine Issue of Material Fact, that It Has Any Interest at All in the '788 Patent.**"  (*Id.* at 13 (boldface and caps in original); *see also id.* at 23-25.)

Given AVT's conduct—its failure to perform reasonable (or any) pre-suit diligence despite knowledge as early as 2003 of defects in the chain-of-title of the '788 patent, its shifting of theories to "support" the pretense that it owned the '788 patent, and its refusal to dismiss the lawsuits even after being confronted by Defendants with evidence to the contrary—these cases "stand[ ] out" from other patent cases.  *Octane Fitness*, 134 S. Ct. at 1756.  Indeed, "[w]ith minimal diligence, … [AVT] should have known it could not have acquired … rights in the patent such that it could have validly brought suit—at all …."  *Visioneer, Inc. v. KeyScan, Inc.*, No. 08-cv-03967-MHP, slip op. at 8 (N.D. Cal. July 9, 2009) (Chen Decl., Ex. 9); *see also Lumen View Tech., LLC,* 24 F.Supp.3d at 336 (finding the case to be exceptional when "the most basic pre-suit investigation would have revealed" evidence of non-infringement); *LendingTree LLC v. Zillow, Inc. et al.,* No. 3:10-cv-00439-FDW-DCK, slip op. at 24 (W.D.N.C. Oct. 9, 2014) (Chen Decl., Ex. 10) (holding that plaintiff's obligation to "conduct careful investigation before

bringing suit" extends to issues beyond infringement). Thus, these cases "stand[] out" and are "exceptional" under § 285, and AVT and its counsel should be jointly and severally subject to sanctions. *Octane Fitness*, 134 S. Ct. at 1756.

> **B.      Sanctions should be imposed for bad faith litigation under § 1927 and this Court's inherent power.**

Given the utter lack of support in AVT's claim of ownership with respect to the alleged AVC to Epogy transfer, sanctions under § 1927 and the Court's inherent power are also warranted. *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) (quoting *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)). The Second Circuit has "held that an award under [section] 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose …." *Id.* (quoting *In re 60 E. 80th St. Equities*, 218 F.3d 109, 115 (2d Cir. 2000)) (internal quotations omitted). Likewise, this Court under its inherent power can sanction AVT for its bad faith in filing and maintaining these frivolous lawsuits. *See*, *e.g.*, *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) ("Notwithstanding the American Rule, however, we have long recognized that federal courts have inherent power to award attorney's fees … when a **party** brings an action in bad faith.") (emphasis added).

Here, AVT and its counsel filed and maintained the lawsuits in bad faith. As this Court observed in granting Defendants' motion to dismiss, there is not even evidence in the record "sufficient to create a genuine issue of material fact as to … whether AVC transferred its interest in the '788 Patent to Epogy … before January 15, 2003, when Epogy purported to transfer that interest to Gross, who in turn purported to transfer it to [AVT]." (Order at 24.) Indeed, it is inconceivable how AVT and its counsel could have satisfied themselves with respect to this critical ownership issue before filing suit, when AVT's own in-house counsel was keenly aware

of the chain-of-title defect as early as 2003 (Chen Decl., Ex. 2). *See Dux S.A. v. Megasol Cosmetic GmbH*, No. 03-CV-8820, 2006 U.S. Dist. LEXIS 395, at *5-6 (S.D.N.Y. Jan. 6, 2006) (bad faith was found when claim of ownership had no merit at all). Moreover, when confronted by Defendants with clear evidence and law contrary to their frivolous position, the bad faith of AVT and its counsel became even more evident because they "persisted in alleging legally unfounded claims despite 'ample opportunity in this case to withdraw the[m].'" *Gollomp v. Spitzer*, 568 F.3d 355, 370-71 (2d Cir. 2009). Thus, the only plausible inference is that AVT and its counsel have filed and maintained these lawsuits in bad faith, and thus should be sanctioned under § 1927 and the Court's inherent power.

## IV.  CONCLUSION

For at least the reasons above, AVT and its counsel should be jointly and severally liable to pay Defendants their attorneys' fees and other costs and expenses that they have incurred from the outset in dealing with these frivolous lawsuits.

Dated:  May 14, 2015                                         Respectfully submitted,

**COOLEY LLP**

By:  */s/ Kyle D. Chen*

Heidi L. Keefe (admitted *pro hac vice*)
Mark R. Weinstein (admitted *pro hac vice*)
Kyle D. Chen (admitted *pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304
Phone: (650) 843-5000

Jonathan Bach (JPB 9710)
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 479-6000

*Attorneys for Defendants HTC Corporation and HTC America, Inc.*

**VENABLE LLP**

By:  */s/ William D. Coston*

William D. Coston (admitted *pro hac vice*)
Jeffri A. Kaminski (admitted *pro hac vice*)
575 7th Street NW
Washington, DC 20004
Tel: (202) 344-4000
Fax: (202) 344-8300
wdcoston@venable.com

Todd Nosher
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
Tel: (212) 370-6246
Fax: (212) 307-5598
jewalker@venable.com

*Attorneys for Defendants Blackberry, Ltd. and Blackberry Corporation*

**KILPATRICK TOWNSEND & STOCKTON LLP**

By:  */s/ Frederick L. Whitmer*

Frederick L. Whitmer (FW-8888)
Megan E. Bussey (MB-1220)
The Grace Building
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 775-8700
Fax: (212) 775-8800
fwhitmer@kilparicktownsend.com
mbussey@kilpatricktownsend.com

-14-

D. Clay Holloway (*admitted pro hac vice*)
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500
Fax: (404) 815-6555
cholloway@kilpatricktownsend.com

Steven D. Moore (*admitted pro hac vice*)
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Tel: (336) 607-7300
Fax: (336) 607-7500
smoore@kilpatricktownsend.com

*Attorneys for Defendant Motorola Mobility LLC*

116812399